The Honorable Susan F. Hutchinson, please sign. Good morning, and please be seated. Your Honor, this case would not be too bad at $15,000. I would like to introduce you to Mr. Dennis Kinnick, who will be presenting the case. Dennis Kinnick, whenever you're ready. Good morning, Your Honors. Counsel, may it please the Court, my name is Elena Kinnick, appearing on behalf of defendant appellant Dennis Clark. Mr. Clark stands convicted of armed robbery after a jury trial. The state's theory was that Clark and co-defendant Christopher Nesbitt conspired to rob a radio shack in Naperville and that Nesbitt was armed with a gun during the robbery in question. The only disputed issue at trial was whether the state proved the firearm described by the occurrence witnesses was actually real. Because the use of a firearm carries an extra 15-year penalty in Illinois, even for accountability cases, the state really went out of its way to persuade the jury that the gun-like object that Nesbitt used was the real deal. When you say gun-like object, the eyewitnesses did testify they believed it was a real gun, correct? They did. However, neither was particularly expert in firearms. The gun was never discharged or recovered. And you had a detective testifying that airsoft pistols, such as the one mentioned in the co-defendant's prior statement, actually looked just like real guns. And you mentioned the co-defendant's prior statement, but there was also another statement of his that was allowed in as a prior consistent statement to corroborate his testimony, correct? That it was a real gun. His taped statement to Detective Arsenault? That's correct. That came in and you're not objecting to that, correct? Correct. So, over defense counsel's objection, Nesbitt did testify in direct that he pled guilty to armed robbery with a real gun in a completely unrelated case from Cook County. But the state didn't stop there. It also brought up Nesbitt's propensity for using a real gun to commit robberies during opening statements, initial closing, and closing rebuttal. And in each instance, the theme was Nesbitt is a real gun kind of guy. You can believe his testimony about using a real gun in this case because he used a real gun before. So, he's bolstering his credibility. Correct. So, while both parties might agree that... Why didn't Mr. Nesbitt want to have control of the gun because he didn't know what the others might do with it? They might discharge it. They might do something silly with it. Isn't that one of the reasons he took charge of this weapon? Yes, Your Honor, but I think that just as the credibility of Nesbitt is suspect on the mere fact of having the weapon, a real weapon, his credibility is equally suspect on, you know, what reasons he's giving for that under the circumstances. In this case, the offense occurred on August 12, 2013, correct? I believe that's correct. The armed robbery that he pled guilty to involving a real gun, that armed robbery occurred just four days earlier on August 8, 2013. Yes. Isn't that fact relevant to whether or not a real gun was used four days later by the same armed robber? Well, the State has not argued that they were, the two armed robberies were related in any fashion. The two armed robberies were related in the fashion that Nesbitt was the armed robber in both of them, correct?  Nesbitt wielded the gun in both armed robberies, the second of which your client was. Well, we don't know too many details about the previous case because it was a guilty plea, but it was armed robbery with a firearm. With a firearm, correct. So why would that fact be relevant to whether or not Nesbitt was armed with a real gun on the 12th? Well, the very fact of him committing another recent armed robbery with a firearm, you know, I think both parties agree that relevance is the starting point for admissibility, but the issue here is whether it was relevant for any proper purpose. And the trial court said that it was, and the standard is abuse of discretion. The trial court said that the prior conviction was not used to bolster credibility, but was used to show that Nesbitt used real guns in his armed robberies. That was the trial court's ruling, correct? Well, the trial court's ruling is a little inconsistent with the way the state actually used it. I think the trial court, certainly pretrial, was obviously talking about the deal that Nesbitt got and suggesting that this might be a way to revive his credibility if defense impeached him on the basis of this deal he got in this case. But that really wasn't why the state asked to use this. The state clearly asked to use it so that the jury could infer that he used a real gun before he used a real gun in this case. And that was consistent throughout pretrial all the way to the end of trial. How is that error? The trial court ruled that that was a perfectly fine way to show that Nesbitt likely used a real gun in the subsequent armed robbery. Well, how is that? Where's the error there? It's problematic because it's basically using that prior conviction to argue that because he used one before, he used one now. And the law calls that propensity evidence, right? Propensity evidence does not – the rules regarding use of other crimes does not apply to non-defendants. I disagree, Your Honor. I think in Pike's, although there's some broad language along those lines, that was really – the court got off base because the defendant in that case set the argument up based on a misreading of Thing Bold, essentially, saying that the other crime's doctrine has no applicability unless it's the defendant's crime. However, in Thing Bold, the issue was not whether, you know, a co-defendant had done it. The issue was that there was an insinuation that the defendant had done that prior bad act, but no actual proof tying him to the crime. So Thing Bold was concerned with an entirely different risk, and building on the broad language in Thing Bold, the defendant in Pike's steered the Illinois Supreme Court down kind of an awkward path. So if you look at the language in Pike's, although ostensibly Pike's concerned – ostensibly the Illinois Supreme Court rejected the defendant's reliance on the other crimes rule in Rule 404B because Pike's concerned other crimes of the co-defendant. The real reason the other crimes rule in 404B doesn't prevent the co-defendant's other crimes from being admitted in Pike's is that the evidence in Pike's was relevant to establish motive. And in fact, the court in Pike's even says that the harm with which the other crimes doctrine is concerned was not at issue in that case. In other words, in Pike's, the state wasn't using the co-defendant's prior shooting to argue that he or the defendant had a propensity to commit the drive-by shooting at issue. They were using it to argue that the defendant had a motive to participate in the current offense, which was completely proper. There were also disputes in that case as to whether it really did go to motive, and that's where the abuse of discretion standard comes in. But in this case, I really think the de novo standard of review is appropriate because it presents a legal question as to whether using a defendant's prior – excuse me, a co-defendant's prior crime to establish his propensity for engaging in similar conduct is a proper purpose for admitting such evidence. And isn't Sullivan distinguishable here because in that case they were saying, well, if the accomplice pled guilty, therefore the defendant in this case must be guilty? That's really not what is being said here. It's not exactly what's being said here. I agree with you. Both Sullivan and Romero, they have some principles that are useful in guiding this, but what stands out is what happened in this trial is really not a typical situation. It's not common for the state to bring in its own witnesses' prior conviction to bolster their testimony. So you're not going to see a case exactly on point. Even if your argument is correct, perhaps the trial court erred and should not have allowed that testimony, wasn't the other evidence overwhelming that the defendant was armed with a real gun? You had two eyewitnesses and you have the prior consistent statement of Nesbitt in a taped statement saying it was a real gun. I would not call that evidence overwhelming by any stretch. What was the evidence that contradicted that testimony? Well, it's not the defendant's burden to prove that it was a – What was the evidence that contradicted that testimony? There was no physical evidence contradicting it. There was impeachment of Nesbitt's testimony with the prior statements telling the detective it was a fake gun. Right, a fake gun. But you also have your client's statement that it was a real gun. Well, my client's statement is a little ambiguous. He used the street term for a real gun. Well, so he alluded to a ratchet. First of all, it's not a recorded statement. But according to the detective's recitation – Did he have the ratchet? He had the ratchet. Did he have the gun? But who's to say that a ratchet refers precisely to a real gun versus a look-a-like? The jury is to say it. And the jury found him guilty. But you're saying, and I think what Justice Bruchette is asking, if he didn't have Nesbitt's statement that – or the introduction of Nesbitt's prior conviction, are you saying he wouldn't have had him guilty on possession with a real gun? I think there's a very real chance there wouldn't have been a conviction here for the real gun. Wasn't there also testimony that I think it was your client that took the gun and pulled it back, or somebody took the gun, emptied the bullets, pulled it back, and said it didn't work? Yes, the co-defendant testified about that. But, again, there was no gun recovered during this investigation. And significantly, there was no thing that looked like a gun during the incident. It was never discharged. So you have these eyewitnesses saying, I saw this thing that looked like a gun. You have a co-defendant whose credibility is suspect for all kinds of reasons. And then you have impeachment of that co-defendant with this allusion to a fake gun. So this is far from overwhelming evidence that this was a real gun. And what's noteworthy is that the state made extensive use of Nesbitt's prior conviction for armed robbery with a real firearm. And so that tells you they thought it was critical to their case to convince the jury that, yeah, there's some questions here, but you can believe Nesbitt's testimony because, look, he was up robbing another place in Cook County with a real gun just recently. And they drove that point home during opening statements and repeatedly during closing arguments. Didn't your client, he got the gun back, according to the scenario from Mr. Nesbitt, and he removed something from it? Did he remove BBs? Did he remove, what did he remove? I don't recall it being explicit. I don't know whether he, you know, it was just something about unloading it. Did he say he removed bullets? What's a bullet? Well, again, I think it comes down to the credibility of those statements, right? We don't agree that Nesbitt's a credible witness. And so what he says my client did and says is also suspect. But Nesbitt isn't the one that testified about emptying the bullets, is he? Maybe I'm not recalling correctly. Was that through the detective? It was Nesbitt's description of what my client was doing, whether it was during his examination or prior consistent statement, I don't recall. Well, in his initial statement that the gun was real, he said that bullets were removed, I believe. He didn't say BBs, airsoft pellets, which are very different than bullets. I'm not taking judicial notice. I just have a kid who shoots them. I mean, it's a bullet's a bullet. Yeah, but we didn't have, you know, these occurrence witnesses, the credible kinds of store workers enter and tell, not tell, Patel, I'm sorry, describing seeing bullets being unloaded. We have the codefendant. Patel testified that he believed it was a real gun. I'm sorry? Patel testified he thought it was a real gun. Right. Both eyewitnesses. I think Ms. Enter said she thought she was going to be killed. And both, well, I mean, the level of her fear isn't really cognitive as to whether it was a real gun or not. I think it's reasonable to assume she'd be terrified if he was wielding an airsoft pistol as well. You're correct. Nesbitt was the one who, Nesbitt gave the gun back. Clark removed the bullets. The record, 559, I think it was Nesbitt testifying. Right. So I think the evidence was far from overwhelming on this particular point. And because evidence of Nesbitt's prior conviction was not relevant for any proper purpose and was, in fact, highly prejudicial under the facts of this case, Clark respectfully requests a remand for any trial. I hear nothing. Thank you. All right. Thank you. You'll have an opportunity for response or rebuttal. Thank you. Thank you. Mr. Visenica, and as long as I live, I probably will not say your name correctly, but I try. You did it exactly right, Your Honor. Thank you. Good morning, Your Honors. My name is Brandon Visenica. May it please the court, counsel, be argued on behalf of the people in this matter. Your Honors have put your finger precisely on the fact or the main argument I've raised in my brief. I fundamentally disagree with opposing counsel. The evidence that this gun was real was overwhelming. And the most damaging piece of evidence against the defendant was his own statement to Detective Arsenault that the gun, that there was a real gun involved. He called it a ratchet. The unequivocal, unrebutted evidence at the trial was a ratchet is a gun, not an airsoft gun, not a fake gun, not a BB gun, but a gun. So all the other evidence admitted that this gun was real, including defendant's, co-defendant's previous conviction for armed robbery, was simply cooperative of defendant's own statement. Well, if even agreeing with that, and I know this is a very difficult situation to put an appellate lawyer in. You're always stuck with the record below, and it's hard to criticize the record below. But didn't the state go a bit too far in their argument with respect to this prior conviction for a weapons offense with a quote unquote real gun? I don't think so, Your Honor. I think given that there was so much evidence that this gun was real. Did they need to go into that? Given that there was so much evidence that this gun was real, did they really need to teeter on going overboard? You mean in mentioning the previous conviction? I don't believe they did because this defendant, this co-defendant actually testified. This is not a case where a previous conviction is being entered in a vacuum independently of the actual co-defendant. He's the one, he himself is the one who talked about this previous conviction. He said he was armed with a gun both times. It's not a case where, well, first of all, this is not a case where the other crimes doctrine applies. So the propensity evidence prohibition in the other crimes doctrine doesn't apply here. Counsel argues that maybe there is some room for disagreement with Pike based upon her analysis. That would be up for the Supreme Court to decide, Your Honor, because the holding is. Pardon me, we're bound by it. Yes, you're completely bound by it, and the holding is that broad. They say unequivocally other crimes evidence analysis applies to cases where it's the defendant at issue, not a witness. And relevance, again, I'm disagreeing with counsel. She said it was an initial inquiry. It's the only inquiry under Pikes. And as Justice Paquette, as you pointed out, the fact that this fellow was convicted of armed robbery with a real gun four days earlier, that's inescapably relevant, inescapably. And so the question is then becomes prejudice. Is it unfairly prejudicial? And the only way opposing counsel can argue that it's unfairly prejudicial is by co-opting the prejudice analysis from other crimes. And you simply can't do that under Pikes. But I think Justice Shostak's comment about what was said, and I'm going to paraphrase it, but it's something like, look, this guy committed an armed robbery just four or five days before with a real gun. He's a gun guy. He's not going to go and commit another robbery with a fake gun. Why do they have to just keep doing that? You have a strong case. And it borders on not misconduct, but just overplay that could hurt the case. If it were inappropriately used, I would agree, Your Honor, but I don't believe it's inappropriately used at all in this case. Again, because it's this co-defendant talking about his previous crimes. It's his actual testimony. And it's relevant. Well, he doesn't say he's a gun guy. He says he used a real gun in an armed robbery four or five days before. That does not make him a gun guy. He's handled a gun a hundred times. That doesn't make him – he's not called himself a gun guy. That was the prosecutor's statement. I agree, Your Honor, but him saying that I've used a gun a hundred times, that makes him a gun guy. He never said he used a fake gun. You know, if he had said he used a fake gun, then he would be a fake gun guy. Have prosecutors ever allowed to use some rhetoric in their arguments? Sure, sure. I don't – you know, if it were inappropriate, I would agree with Your Honors, but I – people don't believe it was inappropriate at all. And that is mostly because of Pike's. Pike says that you don't use other crimes analysis here.  I'm not talking about Pike. I'm simply talking about if the evidence is overwhelming, why then might you – not you personally, but why might you stick your foot in there? I understand what you're saying, Your Honor. If it is a closed question, why overdo it if it's a closed question? Our prosecutors didn't believe it was a closed question, nor do I. All right. There are no other questions. I think they're pondering just a minute. I don't know. You're effective. No, it's my turn. Yeah. She's looking for something. I have nothing. Okay. Thank you, sir. Thank you. All right. Ms. Pettit? Just a couple quick points, Your Honors. First of all, just to reiterate, this was not overwhelming evidence that a real firearm was used. Overwhelming evidence of a real firearm is they find the gun or somebody walks away with a bullet wound or a credible witness hears a gun that's charged. None of those things happen. All we have is some very suspect statements. Your clients' admission that a real gun was used, you don't think that that is compelling evidence? I take issue with the interpretation of that statement as conclusive evidence of the gun's realness. The question is not conclusive. I said compelling evidence. A defendant's voluntary statement is compelling evidence in ordinary circumstances when it is used to establish the element of an offense. Would you agree? Yes. However, I think there's a big difference between my client allegedly saying, I used a real gun and a statement about a ratchet with which a lay witness testifies means, oh, this is a real gun. There's no indication that the officer has some expertise in street lingo. That showing wasn't made. Was that challenged? It was not, but I think it goes to the – it still goes to the strength of that piece of evidence. In addition to the evidence not being overwhelming in this case, I wanted to reiterate that Pikes does not control, number one, because it's distinguishable. In Pikes, the prior offense was clearly used to support the defendant's motive. In this case, the state admits that there is no other reason they introduced this evidence except to allow the jury to infer that the co-defendant has a propensity to use real firearms when he's committing armed robberies. To the extent that the – What if the other crime was your client's use of a real firearm in an armed robbery four days earlier and the firearm used in the subsequent armed robbery was not recovered, would the other crime have been admissible against your client to show that he used a real gun in the August 12 armed robbery? It would not. Why not? For the same reason. It's propensity evidence. The law has long recognized that you – it distrusts the inference that because someone has done something before, he's going to do it again. Doesn't it also show he has access to a real gun? Well, I don't think there's any question in this case about access. More than if he has access. If the defense opened the door somehow and created a question that the state was entitled to respond to, but that's not the case. And also, you know, to your hypothetical about my client having a similar prior, you know, it would also be different if, for example, there was something distinctive about the gun and it supported the identity of the perpetrator in this case. You know, modus operandi. That's an established exception to the bar on the use of other crimes as propensity evidence. But that's not the case here. We don't have any situation where this gun was special in some way that would mark it as the property of either of these people. Was the state's theory that they used this previous case to show that Nesbitt was likely – is likely that he used a real gun, so he's likely to use a gun, or was it showing that he is more likely that he testified truthfully about the gun? I mean, those are two different things. Do you see where I'm going? Yes. What is – do you have a beef with both of those, or either of those, and why? Both of them, Your Honor. Well, I think that one of the cases cited in my brief talked about the problem with using another crime to bolster the credibility of a witness. I mean, if you look – the rule about impeaching witness credibility talks about attacking a witness's credibility, not bolstering it. So I don't think there's any precedent for using it in that fashion. And additionally, just the propensity problem we described. The other one is propensity. Yeah. I think they go hand in hand. Thank you. So if there are no further questions, we would ask that you leave the mat for your trial. Thank you. Thank you. Thank you. Thank you, counsel, for your arguments. We will take the matter under advisement, and we will issue a decision accordingly. Thank you. We will stand in recess for our next meeting.